*Twenty-first Judicial District.*

## In the Orphans' Court of Schuylkill County.

### *In re* ESTATE OF EMELINE R. GEISE, A MINOR.

Where a guardian's bond was improvidently cancelled, and delivered to the heirs of the surety, it was held not to be error to vacate and annul the decree, and order the bond to be restored to the register's office, in accordance with the ruling in Newcomer's Appeal, 7 Wright, 43.

Opinion delivered July 8, 1872, by

WALKER, J. This is a rule upon A. W. Schalck, Esq., to show cause why the bond of Charles Haesler, surety of Mary A. Geise, guardian of Emeline R. Geise (which he had in his possession), should not be restored to the records of the orphans' court, and that the decree of this court, made July 10, 1871, ordering the cancellation of the bond, should not be set aside and annulled.

Mary A. Geise, daughter of Henry Geise, was, on 5th September, 1864, appointed guardian of Emeline, her sister, a minor under the age of fourteen years, and on the same day she filed her bond with Charles Haesler, as security, in the sum of $4,000.

On 31 of August, 1865, she filed her account, showing a balance of $2,799.72 in her hands, which account was confirmed December 4, 1865, and after payment of this amount by Dr. Charles Haesler to Silas W. Geise, guardian, she was discharged by the court on her own petition on 18 January, 1866.

On 26 of May, 1871, Jacob Shaffer was appointed by the orphans' court of Berks county, the guardian of Emeline R. Geise.

On 10 of July, 1871, Mr. Schalck, who is the son-in-law of Dr. Haesler, with his wife, presented a petition to the orphans' court of the county setting fourth that Mary A. Geise had paid over the full amount of money in her hands as guardian, for which Dr. Haesler was surety, and prayed the court to cancel and return the bond to the heirs of Haesler. This motion was made without notice to any one interested. A decree was thereupon made by the associate judges, fully discharging Haesler's estate

from further liability by reason of his suretyship, and ordering the bond to be delivered and cancelled.

On 17 of July, 1871, Jacob Shaffer, the guardian, presented his petition, stating these facts, and the court immediately ordered the bond to be returned to the office, and granted the above rule, which was fully and ably argued by counsel.

The only question now before the court is, *shall this decree be rescinded ?*

(I purpose to discuss this question as a purely legal one, without comment upon the circumstances, believing the error was made unintentionally, and I am authorized to state, that the learned president of the court, and both the associates fully concur with these views, and therefore this opinion must be regarded as a decision *per curiam.*)

It has been argued that as Dr. Haesler paid over to Silas W. Geise, the guardian of Emeline, he is entirely and fully released from further responsibility as surety, and as a competent court of jurisdiction has appointed Silas W. Geise, the guardian, after the discharge of Mary, the former guardian of this minor, its decrees cannot be impeached collaterally except for fraud, and that Jacob Shaffer, the petitioner for this rule, is a stranger to the proceedings, represents no interest, and therefore cannot petition the court to restore the bond and vacate the decree.

The evidence of the payment of the money by Dr. Haesler, is only relevant in a proceeding instituted on the bond by some one interested. It cannot be considered in determining this rule. We do not propose to do so, as it is a question for the jury.

The principle of law that the decrees of a court of competent jurisdiction cannot be impeached collaterally except for fraud, is, no doubt, well established. Numerous authorities have been cited by the counsel for the heirs to sustain this position, and it has been admitted by the other side, but how can this principle of law be invoked upon the question to vacate a decree of this court improvidently made ? If the court ever had any authority to make the decree, surely their power extends to vacating it, if injustice should be done ?

This court has already decided that the bond should be restored to the register's office (and the decision has been acquiesced in), why cannot the decree to vacate be made also ?

It is difficult to understand how we are impeaching collaterally a decree of a court of competent jurisdiction by reforming our own errors.

We are clearly of the opinion, that the court had no power to make the decree in question ; certainly not without notice to all parties interested.

There is no express power conferred upon the court by statute, to cancel and deliver up a guardian's bond, and thus divest the interest of parties in it, without their knowledge or consent, and there is none by implication.

The act of 15 of March, 1832 (P. Dig., 277, pl. 26), provides, *"that all bonds given, or hereafter to be given, by executors, administrators or guardians, shall be held in trust for the use of the commonwealth, and such person or persons as may be interested therein; and suits may be brought thereon, from time to time, by parties interested therein."*

The persons interested are, of course, the ward, or any one that may succeed to the guardianship; they become the owners of the security, and have a vested interest in it. The statute is express that the bond shall be *"held in trust for all persons interested."*

There would be no security to the ward, if the court upon a mere motion of the security, or his heirs, without notice, could order the bond to be delivered up to the security. So express are the authorities on this subject, that even when a second bond was given, the sureties on the first were still held liable. Commonwealth *v.* Cox, Adm., 12 Casey, 442.

The legislature never contemplated even substitution of bonds, for they provided counter security. *"And when the bond of a guardian had improperly been marked 'cancelled,' it was held not error in the court to order the word 'cancelled' to be stricken off."* Newcomer's Appeal, 7 Wr. 45.

"After the bond has been given, the power of the court over it ceases, and a decree annihilating a party's rights, without notice, is simply void." Commonwealth *v.* Rogers, 3 P. F. Smith 470 ; Commonwealth *v.* Risdon, Leg. Gaz. 26 Apr. 1872.

The power of the court cannot be doubted. "Every court must correct its own errors, either by vacating or setting aside its orders." Clark *v.* McComan, 7 W. & S. 470.

"And every court of record is the guardian and judge of its own records. It is clothed with full power to control, inquire into them, and set them right if incorrect." Hoffman *v.* Coster, 2 Wh. 469-70.

We are told that the applicant for this rule is a stranger to the record, and therefore cannot complain. That a stranger cannot appeal, is undoubtedly true. Lawrence Co.'s Appeal, 17 P. F. S. 87 ; Breeden's Estate, 10 Barr 261. But Emeline R. Geise, through her guardian, applies for this rule, and she cannot be regarded as a stranger. She is the ward ; the bond was intended for her security. She is emphatically the interested party under the act of assembly.

That she complains through her guardian does not make her a stranger. She is a minor, and must use the machinery of the law for redress, otherwise she has no remedy. Neither can her guardian, who sues in her name, be regarded as a stranger. He must perform his duty as enjoined by law, or assume the responsibility. The supreme court have said in Newcomer's Appeal, that both the ward, and any one who may succeed to the guardianship, become the owners of the security, and have a vested interest in the bond, and if a vested interest, then a constitutional protection which an act of assembly cannot divest. Neither can a change of guardian (by

removal of one and the appointment of another by the orphans' court for sufficient reasons) change her relation as the interested party in the bond. No one will contend that it does.  Is she a stranger because it is alleged that she is paid in full, and therefore has no interest in the proceedings?

But the allegation of payment in full, or evidence of it, does not make her a stranger, for she may in a suit upon the bond show fraud, collusion, mistake, or any other fact that may controvert the allegation of payment.  But even if she were a stranger, this is a subject that concerns the proper administration of public justice.  In this aspect it assumes a grave and more important bearing.

It is strictly not a contest of individuals for individual rights, but the correction of errors flowing from an improvident order of the court, made by the associate, gentlemen not learned in the law, in the absence of the law judges, without due consideration, without notice to interested parties, upon the application of one of the heirs of the security, against the usual practice of the court, in violation of the provision of the act of assembly, and in derogation of the rights of third parties.

Will a stranger not be allowed to point out this irregularity and illegality?  If he would not, it would be a misnomer to call this tribunal a court of justice.

Suppose a book or a paper of record was surreptitiously removed, or a public document mutilated, and this fact was brought to the attention of the court by some one wholly unconnected with the matter, the court would instantly proceed to investigate the case, and if in their power, would order the record to be restored.

"*He may have no equity*" (said Chief Justice Lewis, in Appleby Manor Road, 1 Grant 445), "*but he has brought the illegality to our notice, and we see that it affects the public rights, it is, therefore, our duty to notice and correct the error.*"

If the facts as set forth by the Haesler heirs are true, no injury beyond delay, can possibly result to them by a jury trial, and if they are not as alleged, and we should refuse to restore the bond in question, great injustice might be done the ward without a hearing, for the supreme court have said in Rittenhouse *v.* Levering, 6 W. & S. 198, that the cancellation of a bond destroys its validity, and this court would be virtually doing indirectly, what they could not do directly, to wit: determine the facts of the case without the intervention of a jury.

For these reasons the decree is vacated, and the rule made absolute, and a decree in accordance with these views will be made.

Messrs. *Bechtel* and *Cumming*, for Emeline R. Geise; Messrs. *Schalck*, *Bartholomew* and *J. W. Ryon*, contra.